UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

TONY GREEN-FAULKNER,

                *Petitioner,*

    -against-                      **MEMORANDUM & ORDER**

ERNEST LOWERRE,[1]               22-CV-624 (KAM)
Superintendent of Five Points
Correctional Facility,

                *Respondent.*
--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Petitioner Tony Green-Faulkner ("Petitioner"), proceeding *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On May 20, 2016, Petitioner was convicted after a jury trial of two counts of Course of Sexual Conduct Against a Child in the First Degree and two counts of Endangering the Welfare of a Child.  (*See* ECF No. 1, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody ("Pet."), at 1; ECF No. 5, Respondent's Aff. & Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus ("State Opp'n"), at ¶7.)  On June 2, 2016, the trial court sentenced Petitioner to thirty-six years of imprisonment and fifteen years of post-release

---

[1] The proper respondent in a federal habeas action is the warden or superintendent of the facility where the petitioner is held.  *See Green v. Lee*, 964 F. Supp. 2d 237, 253 (E.D.N.Y. 2013).  The Court, on its own initiative, deems the Petition amended to change the respondent to the Superintendent of Five Points Correctional Facility, where Petitioner is currently held.  *See* ECF No. 1; Department of Corrections and Community Supervision, https://doccs.ny.gov/location/five-points-correctional-facility (last visited Apr. 23, 2024) (indicating Ernest Lowerre is the current Superintendent of Five Points Correctional Facility).

supervision.  (Pet. at 1.)  In his petition, the Petitioner claims that (1) the evidence at trial was legally insufficient to establish his guilt of Course of Sexual Conduct Against a Child in the First Degree; (2) the prosecutor engaged in misconduct in her summation by introducing the fact that he had chlamydia; (3) the prosecutor engaged in misconduct during her summation by vouching for the victims and "beseeching" the jury to let the victims know they were being heard; (4) the trial court deprived him of a fair trial by not giving an expanded jury instruction on voluntariness of confessions; and (5) his sentence was excessive.  (Pet. at 5–16.)  For the reasons below, the Court respectfully denies the Petition in its entirety.

<u>**BACKGROUND**</u>

## I.   **Factual Background**[2]

At trial, the State presented evidence that Petitioner sexually abused and endangered the welfare of two children. Around September 2011, Petitioner began staying with his cousin ("Stepfather") and his cousin's significant other ("Mother"), a mother of two young girls.  (Trial Transcript[3] ("TT"), at 103–08.)  On numerous occasions between 2011 and 2014, Petitioner

---

[2] Because Petitioner was convicted, the Court summarizes the facts in the light most favorable to the prosecution.  *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).

[3] ECF Nos. 5-5, 5-6, and 5-7.  The trial transcript begins at ECF No. 5-5, page 2, and concludes at ECF No. 5-7, page 206.

sexually abused the two young girls, Victim 1 and Victim 2.  (TT
at 49-74, 164-76.)

On January 27, 2015, Victim 2 told her great aunt ("Aunt")
that Petitioner had sexually abused her.  (*Id.* at 176-77, 279-
80.)  Victim 1 then told her grandmother, who was also present,
that Petitioner had sexually abused her too.  (*Id.* at 74-76.)
That same day, the Aunt called the police and, the next day, she
brought Victim 1 and Victim 2 to the Brooklyn Child Advocacy
Center where they were both interviewed by Detective Reiner
Fehrenbach.  (*Id.* at 279-81.)  On January 28, 2015, Dr. Madhu
Voddi, an expert in child abuse medicine and pediatrics,
examined Victim 1 and Victim 2 at the Brooklyn Child Advocacy
Center.  (*Id.* at 250-73.)  Victim 2 tested positive for
chlamydia, a sexually transmitted disease.  (*Id.* at 269-70.)

On January 29, 2015, detectives, including Detective
Fehrenbach, brought Petitioner to the Brooklyn Child Abuse
Squad, which is attached to the Brooklyn Child Advocacy Center,
to conduct an interview.  (*Id.* at 189, 194-97.)  Detective
Fehrenbach advised Petitioner of his *Miranda* rights, and after
filling out a written form memorializing his understanding of
his *Miranda* rights, Petitioner agreed to speak with Detective
Fehrenbach.  (*Id.* at 199-201.)  Petitioner verbally confessed to
sexually abusing Victims 1 and 2 during his questioning by
Detective Fehrenbach, and told the detective that he was sorry

3

for what he did.  (*Id.* at 201-205.)  After Petitioner verbally
confessed, Detective Fehrenbach suggested that he would write
down a brief statement regarding their discussion, that
Petitioner would review it, and then if Petitioner agreed with
it, could sign it.  (*Id.* at 212.)  Ultimately, Petitioner signed
the statement written by Detective Fehrenbach, in which
Petitioner confessed to sexually abusing Victim 1 and Victim 2,
and he was arrested.  (*Id.* at 212-16.)  The State charged
Petitioner with multiple counts of sexual conduct against a
child and endangering the welfare of a child.  (State Opp'n at
¶6.)

## II.  Procedural Background

### A.    Pre-Trial Hearings

On September 9, 2015, Kings County Supreme Court held a
*Huntley* hearing regarding Petitioner's motion to suppress his
statements to Detective Fehrenbach on January 29, 2015.  (ECF
No. 5-3, September 9 Hearing Tr.,[4] at 1-2, 6.)  Petitioner was
represented by Joseph Ostrowsky, Esq.  (*Id.* at 1.)  Detective
Fehrenbach provided testimony recounting his interview with
Petitioner on January 29, 2015.  (*Id.* at 3-37.)  The trial court
found that Petitioner had knowingly and voluntarily waived his
*Miranda* rights and agreed to speak with police, and therefore

---

[4] The transcript for the September 9 Hearing begins at ECF No. 5-3, page 2,
and concludes at ECF No. 5-3, page 40.

denied Petitioner's motion to suppress.  (ECF No. 5-2, Br. for State-Appellee ("State Appellate Br."), at 3 n.2.)

On May 10, 2016, the trial court held a pre-trial hearing for preliminary applications.  (ECF No. 5-3, May 10 Hearing Tr.,[5] at 1–2.)  Petitioner was represented by new counsel, David Walensky, Esq.  (*Id.* at 1.) The court heard arguments on an application by the state to introduce a portion of Petitioner's medical records.  (*Id.* at 5–16.)  Specifically, the State sought to introduce records showing that Petitioner had tested positive for chlamydia during a nonvoluntary screening when he arrived at Rikers Island.  (*Id.* at 5.)  After hearing argument from both the State and the defense, the trial court declined to admit evidence showing that Petitioner tested positive for chlamydia, reasoning that case law cited by the State did not support admission of Petitioner's test results as evidence of his guilt. (*Id.* at 53–55.)

Also during the May 10, 2016, pre-trial hearing, the court heard arguments on the State's application to introduce a prison phone call from February 18, 2015, between Petitioner and the Mother (the "Call").  (*Id.* at 57–61.)  The Call included the following exchange[6]:

> MOTHER: You went to the clinic right?
> PETITIONER: Yeah.

---

[5] The transcript for the May 10 Hearing begins at ECF No. 5-3, page 45, and concludes at ECF No. 5-3, page 121.

[6] Ellipses indicate pauses by speakers rather than omissions by this Court.

```
MOTHER: And you got . . . that, right?
PETITIONER: Mmhmm.
MOTHER: So, if you, quote, unquote [inaudible] my kids,
they should test positive for that.
PETITIONER: Not only that . . . I was gonna tell you
that, too . . . like . . . if . . . you can go check and
see if they still got their virginities . . .
MOTHER: No, they said that the hymie doesn't always
break.  Cause you know I spoke about that too already.
Trust me . . . I already did that.  But that's another
defense.
```

(ECF No. 5-1, Br. for Def.-Appellant ("Pet. Appellate Br."), at 16-17.)  The prosecutor argued that the Petitioner's statements on the Call implied that he had tested positive for chlamydia.  (ECF No. 5-3, May 10 Hearing Tr., at 60.)  The court admitted the Call into evidence provided that the State could lay a proper foundation.  (ECF No. 5-4, at 2.)

**B.  Trial**

Petitioner was tried by a jury in Kings County Supreme Court.  The State's witnesses included Victim 1; Victim 2; the Mother; Detective Fehrenbach; Dr. Voddi; the victims' Aunt; the victims' Stepfather; and Dr. Anne Meltzer, a child psychologist.  (*See generally* TT.)  Petitioner did not testify and called no witnesses.  (*Id.* at 346.)

Both Victim 1 and Victim 2 testified to numerous instances of sexual abuse by Petitioner during the period from 2011 to 2014.  (*Id.* at 49-74; 164-76.)  Victim 1 testified that, beginning in 2011, Petitioner sexually abused her when she was between seven and nine years old.  (*Id.* at 49-74.)

6

Specifically, Victim 1 stated that between November 29, 2011, and December 31, 2013, Petitioner put his penis in her mouth, vagina, and anus on more than five occasions. (*Id.*)  Victim 2 testified that she suffered similar acts of sexual abuse by Petitioner beginning in 2013, when she was between six and seven years old. (*Id.* at 164–76.)  As part of this abuse, Victim 2 testified that between December 23, 2013, and December 24, 2014, Petitioner put his penis in her anus more than five times. (*Id.*)

Also during the trial, near the end of the State's direct examination of the Mother, the prosecutor played the Call, which reflected the February 18, 2015, conversation between the Mother and Petitioner. (*Id.* at 145.)  The prosecutor questioned the Mother regarding whether her daughters were examined by a doctor and tested for sexually transmitted diseases, and the Mother stated that they were examined by a doctor. (*Id.*)  After testifying that she received the results of the testing for sexually transmitted diseases subsequent to her February 18, 2015, conversation with Petitioner, the Mother stated that she did not continue speaking with Petitioner after receiving Victim 2's results. (*Id.* at 146.)  Later in the trial, during the direct examination of Dr. Voddi from the Brooklyn Child Advocacy Center, the prosecutor elicited testimony from Dr. Voddi that

Victim 2 tested positive for chlamydia, and that the Mother was notified of the positive test result.  (*Id.* at 270-71.)

Before summations, the defense moved to dismiss the indictment in its entirety, arguing the evidence was insufficient to support a conviction.  (*Id.* at 343-45, 348.) The trial court denied the motion to dismiss the entire indictment.  (*Id.* at 346, 348.)  Petitioner's counsel also requested that the court charge the jury with a charge on voluntariness of confessions.  (*Id.* at 351-60.)  The State opposed the request.  (*Id.* at 352.)  After an off-the-record bench conference, the court decided to "include a charge with regard to voluntariness" but not "the expanded one."  (*Id.* at 359-60.)  Petitioner's counsel objected to the court's refusal to give the expanded voluntariness charge.  (*Id.* at 360.)

During the State's summation, and despite the trial court's pre-trial ruling, the prosecutor said "the [Petitioner] tested positive for [] chlamydia."  (*Id.* at 401; *see also id.* at 402-04.)  In response, Petitioner's counsel made a timely objection, which the court sustained, and part of the prosecutor's statement was stricken.  (*Id.* at 401-02.)  The court gave a curative instruction to the jury before the State continued its summation.  (*Id.* at 402.)  After the summation, Petitioner moved for a mistrial.  (*Id.* at 407.)  The prosecutor argued that the State established a reasonable inference that Petitioner had

8

chlamydia, considering the Call where Petitioner mentioned he tested positive for something and that the Mother stopped speaking with Petitioner after receiving Victim 2's test results. (*Id.* at 408–09.)  The court denied the motion for a mistrial, noting that "an inference that the complaining witness contracted chlamydia from the [Petitioner] does find support in the record of the trial," but that the prosecutor's attempt to urge the jurors to draw such an inference was "inartful, at best." (*Id.* at 414.)  The court added an instruction to its final charge to the jury about lawyers not being witnesses in a case, and it instructed the jury that a lawyer's summation is not evidence. (*Id.* at 414, 423–24.)

Also during the State's summation, the prosecutor made remarks that the victims were telling the truth and urged the jury to let the victims know they were being heard. (*See, e.g.*, *id.* at 388 ("You can feel the truth of [the victims'] words, because it's too true."); *id.* at 378 ("[Y]ou were all selected as jurors in this case to give it the seriousness it deserves and to let Victim 1 and Victim 2 know that they [are] being heard.").)  Petitioner's counsel timely objected to the State's assertion that the victims were telling the truth, and the court sustained counsel's initial objections but overruled further objections after the prosecutor changed her wording. (*See, e.g.*, *id.* at 388.)

The jury convicted Petitioner on two counts of Course of Sexual Conduct Against a Child in the First Degree and two counts of Endangering the Welfare of a Child.  (*Id.* at 496–97.) Petitioner was sentenced on June 2, 2016, and is serving consecutive and concurrent prison terms totaling thirty-six years of imprisonment, followed by fifteen years of post-release supervision.  (ECF No. 5-8, Sentencing Hearing Tr., at 1, 16–17.)

### C.  Direct Appeal

In January 2020, Petitioner, represented by counsel, timely appealed his conviction to the New York State Supreme Court's Appellate Division, Second Department.  (ECF No. 5-1, Def. Appellate Br., at 43.)  Petitioner challenged his conviction on the following grounds: (1) the evidence was insufficient to prove that he committed Course of Sexual Conduct Against a Child in the First Degree against Victim 2; (2) the trial court deprived him of his constitutional right to a fair trial by not giving an expanded jury instruction on voluntariness of confessions; (3) the State's summation denied him of a fair trial because the prosecutor committed misconduct by vouching for the victims and "beseeching" the jury to let the complainants know they were being heard; and (4) his sentence was excessive.  (*Id.* at 2.)

10

On December 9, 2020, the Appellate Division unanimously affirmed the judgment and sentence. *See People v. Green-Faulkner*, 136 N.Y.S.3d 319, 321 (2d Dep't 2020). First, as to Petitioner's claim regarding insufficient evidence, the Appellate Division held that it was "unpreserved for appellate review" and "[i]n any event . . . the evidence was legally sufficient to establish that [Petitioner] engaged in two or more acts of sexual conduct over a period of at least three months." *Id.* Second, in denying Petitioner's claim regarding the jury instruction, the Appellate Division held that the charge "accurately stated the law, and the court did not improvidently exercise its discretion in declining to give the jury an expanded charge." *Id.* Third, the Appellate Division held that Petitioner's claim regarding the prosecutor's summation was "unpreserved for appellate review." *Id.* The Appellate Division further noted that, although "certain of the prosecutor's remarks were improper . . . errors in the prosecutor's summation were harmless" and not "egregious or pervasive enough" to deny Petitioner of a fair trial. *Id.* (citation omitted). Fourth, the Appellate Division held that the sentence was not excessive. *Id.* The New York Court of Appeals denied Petitioner leave to appeal on February 11, 2021. *People v. Green-Faulkner*, 165 N.E.3d 692 (N.Y. 2021).

### D.   Federal Habeas Review

On January 15, 2022, Petitioner timely filed a *pro se* petition for a writ of habeas corpus.  He alleged the following five claims: (1) insufficient evidence to prove Course of Sexual Conduct Against a Child in the First Degree; (2) the prosecutor engaged in misconduct in her summation by introducing the fact that he had chlamydia; (3) the prosecutor engaged in misconduct in her summation by bolstering victim testimony; (4) the trial court denied Petitioner a fair trial by refusing to give an expanded jury instruction; and (5) his sentence was excessive. (Pet. at 5–16.)

On April 4, 2022, Respondent filed an affirmation and a memorandum of law in opposition to the petition.  (ECF No. 5.) Petitioner subsequently filed two reply briefs in support of his petition.  (ECF No. 6; ECF No. 9.)  In light of Petitioner's *pro se* status, the Court will consider the arguments raised in both of his reply briefs.  *See Licausi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020) ("Submissions by a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers."); *see also Martinez v. Huffard*, No. 13-CV-1854 (JPO) (SN), 2014 WL 8663306, at *8 n.6 (S.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2015 WL 1821642 (S.D.N.Y. Apr. 21, 2015) (liberally construing a *pro se* habeas petitioner's arguments only raised in their reply brief).

**LEGAL STANDARD**

12

A petition for a writ of habeas corpus under 28 U.S.C. § 2254 is the vehicle by which a state prisoner obtains federal review of his or her state custody. *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). The federal court may issue the writ only if it finds that the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2254(a). Any claim for which the petitioner seeks habeas relief must have been fairly presented for review and exhausted in state court. 28 U.S.C. § 2254(b).

Respect for judicial federalism requires that a federal habeas court refrain from resurrecting a claim the petitioner "procedurally defaulted" in state court. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017). A procedural bar is present when the state court clearly and expressly relied on a state procedural rule to dispose of the petitioner's claim, regardless of whether the state court also addressed the merits of the claim. *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018). Under New York law, if the petitioner failed to raise a record-based claim on direct appeal in state court, the petitioner may not then seek collateral relief in New York courts, and the claim is procedurally defaulted. *See Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000) (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). The petitioner may raise a procedurally defaulted claim in a federal habeas proceeding

13

only by showing either (1) good cause for the default and resulting prejudice or (2) that he is actually innocent. *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023).

If the state court adjudicated the petitioner's claim on the merits, the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the habeas court to give the state court's decision great deference. *McCray v. Capra*, 45 F.4th 634, 640 (2d. Cir. 2022).  The state court need not explain its reasoning for its decision to be considered "on the merits." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).  If the petitioner presented the claim to the state court and the state court denied relief, the habeas court may presume the state court adjudicated the claim on the merits absent any contrary indication or state law principle. *Id.*

Under AEDPA, a state court decision on the merits must stand unless it was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented" in the state court.  28 U.S.C. § 2254(d).  "Clearly established federal law" means a holding, as opposed to dicta, of a Supreme Court decision that existed at the time of the relevant state court decision. *McCray*, 45 F.4th at 640.  The habeas court may not use Second Circuit precedents

14

to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule" that the Supreme Court "has not announced." *Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

A state court decision is "contrary to" clearly established federal law if it contradicts a Supreme Court decision on a legal question or decides a case differently from how the Supreme Court decided a case with materially indistinguishable facts. *McCray*, 45 F.4th at 640 (quoting 28 U.S.C. § 2254(d)). A state court decision "involve[s] an unreasonable application of" clearly established federal law if the state court identifies the correct legal rule from the applicable Supreme Court decision but unreasonably applies it to the facts of the petitioner's case. *See id.* (quoting 28 U.S.C. § 2254(d)).

When a habeas petitioner proceeds *pro se*, the court holds the petition to less rigorous standards than it holds filings by counseled parties. *Licausi*, 460 F. Supp. 3d at 260. The court must liberally construe the petition to raise the strongest arguments it suggests. *Id.* Still, *pro se* petitioners are not exempt from the applicable procedural and substantive rules. *Banner v. Royce*, 525 F. Supp. 3d 417, 418 (E.D.N.Y. 2021).

## DISCUSSION

Petitioner raises five grounds for habeas relief.  The
Court first addresses the insufficient evidence claim, and then
the two summation claims, the jury instruction claim, and the
excessive sentence claim.

## I.    Insufficient Evidence

Petitioner first claims that "there was no evidence that
the alleged conduct occurred for 'not less than three months'
during the relevant time frame."  (Pet. at 5 (quoting N.Y. Penal
Law § 130.75(1)).)  Although Petitioner does not specify[7] whether
there was insufficient evidence of sexual abuse for Victim 1 or
Victim 2, the Court liberally construes the Petition to allege
insufficient evidence of Course of Sexual Conduct Against a
Child in the First Degree against both Victim 2 and Victim 1.
*See Licausi*, 460 F. Supp. 3d at 260 ("Courts must liberally
construe a *pro se* petition to raise the strongest arguments it
suggests.").  The Court will first consider Petitioner's
argument as it relates to Victim 2, and second as to Victim 1.

### A.    Insufficient Evidence as to Victim 2

In his appellate brief, Petitioner argued that the
prosecution failed "to prove that for a period of time not less

---

[7] The Court notes that Petitioner's second reply includes arguments as to both
victims, which the Court construes as challenging the sufficiency of the
evidence as to both victims.  (ECF No. 9 at 1-2.)  Given the petition is
ambiguous and could refer to both victims, and the Court's duty to liberally
construe a *pro se* petition, the Court will read the Petition and the replies
to raise the strongest argument possible.  *See Martinez*, 2014 WL 8663306, at
*8 n.6 (liberally construing a pro se habeas petitioner's arguments only
raised in their reply brief).

16

than three months sometime in the year between December 23, 2013 and December 24, 2014, [Petitioner] engaged in two or more acts of sexual conduct with Victim 2." (ECF No 5-1, Def. Appellate Br., at 24.)

The Appellate Division rejected this claim as unpreserved and "[i]n any event, viewing the evidence in the light most favorable to the prosecution, [found] that it was legally sufficient to establish the [Petitioner]'s guilt beyond a reasonable doubt on this count." *Green-Faulkner*, 136 N.Y.S.3d at 321 (citation omitted). In denying the claim as unpreserved, the Appellate Division relied on New York's contemporaneous and specific objection rule as well as state court precedent holding that motions to dismiss charges at the close of evidence must be directed at specific evidentiary deficiencies and that "general motions" fail to preserve legal sufficiency challenges for appeal. *See id.* (citing N.Y. Crim. Proc. Law § 470.05(2); *People v. Hawkins*, 900 N.E.2d 946, 950-51 (N.Y. 2008)).

The Court agrees with the Appellate Division's determination that Petitioner's claim is procedurally barred. Even if the Court were to review it, however, this claim would fail on the merits.

### 1. Procedural Bar

New York courts have long required that objections be addressed to the specific deficiency in the evidence to preserve

17

an issue for appeal, in order to allow the trial judge to evaluate the legal merits of the motion. *See Hawkins,* 900 N.E.2d at 950–51; *People v. Gray,* 652 N.E.2d 919, 922 (N.Y. 1995). At the close of the prosecution's case, and as is relevant to Victim 2, defense counsel made the following motion for a trial order of dismissal:

> MR. WALENSKY: Now regarding the other count 130.75(1)(a) and 130.81(1)(a) which are the fourth and fifth counts of this indictment. This is regarding Victim 2. The People have failed to prove beyond a reasonable doubt each and every factor necessary to maintain the charge of–
> THE COURT: Course of conduct.
> MR. WALENSKY: Course of sexual conduct against a child in that they failed to show that there were two or more acts of sexual conduct, which include an oral sexual conduct, anal sexual conduct, aggravated sexual conduct between the penis of [Petitioner] and the anus of and/or contact between the penis of [Petitioner] and the buttocks of Victim 2. A child less than 11 years old.

(TT at 344–45.)

At the close of trial, defense counsel made the following motion:

> MR. WALENSKY: Your Honor, I renew my motion that was made at the close of People's case and each and every factor that may be taken verbatim so I am not just repeating myself. So I do move for a trial order of dismissal based upon the argument previously given.

(*Id.* at 348.) The trial court denied the motion. (*Id.*)

The Appellate Division properly applied state court precedent in finding that Petitioner's general, perfunctory motion to dismiss failed to preserve a legal sufficiency

challenge for appeal. *See Green-Faulkner*, 136 N.Y.S.3d at 321.
When counsel's objection does "little more than argue that the
People failed to prove the essential elements of [a crime]," the
legal question is unpreserved for review. *Hawkins*, 900 N.E.2d
at 951. Here, Petitioner's counsel simply recited some of the
elements of Course of Sexual Conduct Against a Child in the
First Degree, and he omitted the timing element that Petitioner
now seeks to challenge.[8] (TT at 344-45.) Therefore,
Petitioner's motion to dismiss failed to alert the trial court
to the specific claim later advanced in Petitioner's appellate
brief, that the prosecution failed to prove that Petitioner's
sexual conduct against Victim 2 occurred during a time period of
not less than three months during the relevant time frame.

As other courts in this circuit have found, legal
sufficiency claims are procedurally barred where the Appellate
Division finds them unpreserved based on the state court
precedent that the Appellate Division relied on here. *See,
e.g., Hill v. Lee*, No. 11-cv-640 (ER) (GAY), 2013 WL 3227641, at
*5-6 (S.D.N.Y. June 25, 2013) (finding procedural bar prevents
habeas review in case where Appellate Division cited *Hawkins*,

---

[8] In contrast to defense counsel's motion at trial to dismiss the charge
regarding Victim 2, his motion regarding Victim 1 referenced the time-frame
element of the charge. Specifically, defense counsel stated, "for the second
count of the indictment . . . they failed to prove that this was a continual
course of conduct for more than three months and that [Petitioner] engaged in
two or more acts of sexual contact as previously discussed." (TT at 344.)

900 N.E.2d 946).  Further, the Appellate Division's decision to discuss the merits does not remove the procedural bar.  *See Carey v. Connell*, No. 10-cv-3873 (DLC), 2012 WL 37084, at *4 n.1 (S.D.N.Y. Jan. 6, 2012) (noting that the Appellate Division may rest its decision on both a state procedural bar and that the case is without merit).  Because Petitioner has not argued that there was good cause for, or prejudice resulting from, the procedural bar, nor has he established that he is actually innocent, his legal sufficiency claim cannot support habeas relief.

Even if Petitioner's claim was not procedurally barred, it would fail on the merits as described below.

### 2. Merits

Sufficiency of the evidence claims in federal habeas cases "face a high bar," because they are subject to two layers of judicial deference.  *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  First, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Second, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas [review]

20

unless the 'decision was objectively unreasonable.'"  *Id.*
(quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

When "faced with a record of historical facts that supports
conflicting inferences," this Court must presume "the trier of
fact resolved any such conflicts in favor of the prosecution,
and must defer to that resolution" even if it is not
affirmatively in the record.  *Wheel v. Robinson*, 34 F.3d 60, 66
(2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).  Therefore,
"[a] habeas court will not grant relief on a sufficiency claim
unless the record is 'so totally devoid of evidentiary support
that a due process issue is raised.'"  *Sanford v. Burge*, 334 F.
Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41
F.3d 825, 830 (2d Cir. 1994)).

When reviewing a sufficiency of the evidence claim, "[a]
federal court must look to state law to determine the elements
of the crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d
Cir. 1999).  To find Petitioner guilty of Course of Sexual
Conduct Against a Child in the First Degree against Victim 2,
the jury had to find, in pertinent part, that the evidence
proved beyond a reasonable doubt that "over a period of time not
less than three months in duration; namely, on or about and
between December 23, 2013 and December 24, 2014, in the County
of Kings, [Petitioner] engaged in two or more acts of sexual
conduct with Victim 2," (TT at 454), who was less than eleven

21

years old, and that "such sexual conduct included at least one act of sexual intercourse, oral sexual conduct, or anal sexual conduct." (*See id.* at 452-55); *see also* N.Y. Penal Law § 130.75(1).

Viewing the record in the light most favorable to the prosecution, a fact finder had sufficient evidence to conclude that Petitioner committed two or more acts of anal sexual conduct against Victim 2, who was between six and seven years old, over a period of not less than three months during the charged time frame. Victim 2 testified that in their Brooklyn apartment, Petitioner first put his penis into her buttocks on or about December 24, 2013, when she was six years old. (TT at 162, 164, 168-69.) Victim 2 also testified that Petitioner put his penis into her buttocks and continued to do so at night in her bedroom, a "lot of times" and "more than five [times]." (*Id.* at 173.) The last time this happened was after Christmas of 2014. (*Id.* at 174.) Further, Victim 1 testified that she witnessed Petitioner sexually abuse Victim 2. (TT at 71-73.) Therefore, this Court finds that a reasonable fact finder could have found that the prosecution proved beyond a reasonable doubt that Petitioner committed two or more acts of sexual conduct against Victim 2 over at least three months during the relevant time frame. Accordingly, this claim does not support habeas relief notwithstanding the procedural bar.

### B.    Insufficient Evidence as to Victim 1

In his appeal, Petitioner did not claim that the evidence was insufficient to support his conviction on charges related to Victim 1.  Because Petitioner failed to present this claim to the Appellate Division in his direct appeal, it is procedurally defaulted, and may not support a claim for habeas relief.  Even if the Court were to reach the merits on this claim, however, it would fail.

### 1. Procedural Default

Section 2254 requires a petitioner to exhaust state judicial remedies prior to seeking relief in federal court.  28 U.S.C. § 2254(b)-(c).  "A claim is deemed exhausted if the petitioner: (1) 'fairly presented' to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear it."  *Wright v. Lee*, No. 13-cv-5392 (PGG) (SN), 2015 WL 4391575, at *7 (S.D.N.Y. July 15, 2015) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999)).

A petitioner is only allowed one direct appeal, and a collateral attack pursuant to CPL § 440.10 is reserved for claims not on the record.  *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).  A claim is procedurally defaulted if a state prisoner has failed to exhaust state remedies with respect to a

23

claim but can no longer raise the claim in state court.  *See Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

A petitioner can overcome this bar on review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To establish cause for the default, a habeas petitioner must show that "some objective factor external to the defense impeded" the petitioner's ability to present the claim.  *Id.* at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Such a scenario may exist where "the factual or legal basis for a claim was not reasonably available to counsel" or when "some interference by officials . . . made compliance impracticable." *Id.* (quoting *Murray*, 477 U.S. at 488).  To establish prejudice, a petitioner must show "'there is a reasonable probability' that the result of the trial would have been different" absent the alleged constitutional violation.  *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).  A petitioner may also be able to overcome a procedural default if he can prove "actual innocence" such that a failure to consider the claims will result in a "fundamental miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

Here, because Petitioner failed to raise a claim on appeal that the evidence was insufficient to support his charges related to Victim 1, Petitioner's claim is unexhausted and procedurally defaulted.  Petitioner has not provided any evidence of cause for his default, prejudice, or support for an argument of actual innocence resulting in a miscarriage of justice.  Therefore, this claim is procedurally barred and cannot support habeas relief.

### 2. Merits

Even if the Court were to examine the merits, Petitioner's claim would fail.  To find Petitioner guilty of Course of Sexual Conduct Against a Child in the First Degree against Victim 1, the jury had to find, in pertinent part, that the evidence proved beyond a reasonable doubt that "over a period of time not less than three months in duration; namely, on or about and between November 29, 2011 and December 31, 2013, in the County of Kings, [Petitioner] engaged in two or more acts of sexual conduct with Victim 1 . . ., includ[ing] at least one act of sexual intercourse, oral sexual conduct, or anal sexual conduct[;] [a]nd [] that Victim 1 was less than 11 years old." (TT at 487); *see* N.Y. Penal Law § 130.75(1).  Viewing the evidence in the light most favorable to the prosecution, a fact finder had sufficient evidence to conclude that Petitioner was guilty of this count.  Victim 1 testified that, between November

2011 and May 2013, Petitioner put his penis into her mouth "a lot of times" and "more than [five times]."  (*Id.* at 62.) Victim 1 also described multiple times that Petitioner put his penis in her anus and vagina, (*see id.* at 56-63, 67-68.), and Victim 1 testified that Petitioner sexually abused her in her bedroom, her mother's bedroom, the living room, and the bathroom of their apartment.  (*Id.* at 89.) Therefore, this Court finds that a reasonable fact finder could have found that the prosecution proved beyond a reasonable doubt that Petitioner committed two or more acts of sexual conduct, including at least one act of sexual intercourse, oral sexual conduct, or anal sexual conduct, against Victim 1 over a period of at least three months during the relevant time frame.  This claim, therefore, could not support habeas relief even if it were not procedurally defaulted.

## II. Summation

Petitioner raises two claims regarding the prosecution's summation.  First, he claims the prosecutor inappropriately "bolstered evidence of testimony" in her summation when she revealed that Petitioner had tested positive for chlamydia, "which had been kept out of the trial to ensure a fair trial." (Pet. at 6.)  Second, Petitioner argues that the prosecutor "engaged in misconduct" in her summation by "among other things, repeatedly asserting that the child complainants were telling

26

the truth" and "beseeching the jury to let [the victims] know they were finally being heard."  (*Id.* at 9.)

A.    **Bolstering of Evidence**

Petitioner's claim that the prosecution's summation was improper because the prosecutor stated that Petitioner had tested positive for chlamydia is procedurally defaulted and may not support a claim for habeas relief because Petitioner failed to raise the claim in state court.  Even if the Court were to reach the merits on this claim, however, it would fail.

**1. Procedural Default**

As with Petitioner's insufficient evidence claim regarding Victim 1, Petitioner failed to raise the claim regarding the prosecutor's reference to his positive test for chlamydia in his appeal.  Petitioner's record-based claim is thus not exhausted and procedurally barred.  *See Spence*, 219 F.3d at 170.  In the instant Petition, Petitioner states that he did not raise this claim because his "appeal lawyer did not think it was a good idea."  (Pet. at 7.)  The Court does not find that counsel's strategic decision not to raise a claim on appeal demonstrates cause for his default.  *See Murray*, 477 U.S. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").  Petitioner has not provided any evidence of prejudice or support

for an argument of actual innocence resulting in a miscarriage of justice.  Furthermore, even if this claim was not procedurally barred, it would be meritless, as described below.

### 2. Merits

Although New York law prohibits bolstering testimony, federal habeas petitioners typically cannot prevail on bolstering claims because such state-law evidentiary claims do not implicate federal law.[9]  *See* 28 U.S.C. § 2254(a); *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) ("[S]tate trial court evidentiary rulings generally are not a basis for habeas relief.").  Further, bolstering "is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a [petitioner] of his due process right to a fair trial." *Mejia v. Superintendent, Elmira Correctional Facility*, No. 20-CV-2836 (KAM), 2023 WL 7857277, at *13 (E.D.N.Y. Nov. 16, 2023) (quoting *Huber v. Schriver*, 140 F. Supp. 2d 265, 279–80 (E.D.N.Y. 2001)).

Even if bolstering were sufficiently prejudicial to deprive a petitioner of the right to a fair trial, here, it does not appear that the prosecutor engaged in bolstering.  *See Totesau v. Lee*, No. 22-1297, 2023 WL 8253683, at *2 (2d Cir. Nov. 29,

---

[9] "New York rules of evidence prohibit 'bolstering,' which its high court has defined as 'the testimony of a third party (typically, a police officer) to the effect that the witness identified a defendant as the perpetrator on some prior occasion.'" *Totesau v. Lee*, No. 22-1297, 2023 WL 8253683, at *2 (2d Cir. Nov. 29, 2023) (summary order) (quoting *People v. Spicola*, 947 N.E.2d 620, 626 (N.Y. 2011)).  Bolstering can also refer to "the fortification of a witness's testimony and credibility through the use of a prior consistent statement." *Spicola*, 947 N.E.2d at 626.

2023) (summary order) ("By definition, a summation point is not testimony and thus cannot be construed as bolstering."); *see also Crawford v. Lee*, No. 09-cv-4527 (CBA), 2013 WL 696527, at *13 (E.D.N.Y. Feb. 26, 2013) (rejecting habeas claim styled as a bolstering claim when no bolstering appeared to have occurred). Rather, it appears that Petitioner is alleging improper summation remarks by the prosecutor regarding the fact that Petitioner tested positive for chlamydia.  A court reviews allegedly improper summation comments by a prosecutor "in the context of the entire argument before the jury to determine whether the defendant was deprived of a fair trial."  *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998).  Under New York law, summation comments "are permissible if they constitute a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel during summation.'"  *Roman v. Filion*, No. 04-cv-8022 (KMW) (AJP), 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (collecting cases).  Here, the prosecutor's comments were both relevant to the evidence at trial and made in response to defense counsel's summation.

First, the prosecutor referenced Petitioner's positive test to draw an inference supported by the trial record.  *See United States v. Wilner*, 523 F.2d 68, 73 (2d Cir. 1975) ("The prosecutor was entitled to marshal all the inferences [in her

29

summation] which the evidence supported."). Before trial, the court declined to admit Petitioner's medical records indicating that he had tested positive for chlamydia. (ECF No. 5-3, May 10 Hearing Tr., at 53-55.) The court admitted into evidence, however, the Call where Petitioner and the Mother discussed that Petitioner had tested positive for an unspecified disease and that, if he had sexually abused the victims, they would also test positive for that disease. (ECF No. 5-4, at 2.) Before trial, the prosecution explained that they would use the Call, combined with the fact that the Mother stopped speaking with Petitioner after her daughter tested positive for chlamydia, to ask the jury to draw an inference that Petitioner had chlamydia and gave it to Victim 2. (ECF No. 5-3, May 10 Hearing Tr., at 57-60.)

After the state's summation, the prosecutor once again explained that their argument was the Call created a reasonable inference that Petitioner had chlamydia. (TT at 407-09.) As noted by the trial court when denying defense counsel's motion for a mistrial because of the prosecutor's summation comments, the prosecutor's attempt to make this inference was "inartful." (*Id.* at 414.) Still, the inference that Petitioner had tested positive for chlamydia was supported by the trial record. (*Id.*)

Second, the prosecutor's comments about Petitioner's positive test were a proper response to defense counsel's

30

summation.  *See King v. Greiner*, No. 02-cv-5810 (DLC) (AJP),
2008 WL 4410109, at *35 (S.D.N.Y. Sept. 26, 2008) (collecting
N.Y. cases where a prosecutor's summation comments were a proper
response to defense counsel's summation), *report and
recommendation adopted*, 2009 WL 2001439 (S.D.N.Y. July 8, 2009),
*aff'd*, 453 F. App'x 88 (2d Cir. 2011).  In summation, defense
counsel stated, "[s]uddenly [the Mother] stops [looking for a
defense for Petitioner] because she—because Victim 2 has
chlamydia, but we don't know where she has got it from. . . .
There is no evidence, no medical evidence or records regarding
my client."  (TT at 372.)  The prosecutor objected and the court
sustained the objection.  (*Id.*)  Defense counsel also played the
Call in support of his theory that an innocent man would not
have said that the victims should be checked to determine
whether they still had their virginities.  (*Id.* at 367–68.)  The
prosecutor also attempted to draw an inference, based on the
Call, that Petitioner had chlamydia and had transmitted the
disease to Victim 2.  (*Id.* at 401–03.)  Even if made in an
"inartful" manner, the prosecutor's statement was an appropriate
rebuttal to defense counsel's argument that there was no medical
evidence regarding his client in relation to Victim 2's
chlamydia and that the Call indicated his client's innocence.

Moreover, even if the prosecutor's comments were improper,
they did not cause "actual prejudice" by infecting the trial

31

with unfairness.  *See Tankleff v. Senkowski*, 135 F.3d 235, 252
(2d Cir.1998).  "In determining whether the prosecutor's
comments cause prejudice, the court considers three factors:
'(1) the severity of the misconduct, (2) the measures adopted to
cure the misconduct, and (3) the certainty of conviction absent
the improper statements.'"  *Dunn v. Sears*, 561 F. Supp. 2d 444,
457 (S.D.N.Y. 2008) (quoting *United States v. Thomas*, 377 F.3d
232, 245 (2d Cir. 2004)).  Here, the allegedly improper
statements by the prosecutor did not amount to severe misconduct
and were merely an "inartful" way of responding to defense
counsel and drawing out an inference.  To cure any prejudice
that the remarks might have caused, the trial court included in
the final jury charge that lawyers' statements are arguments and
not evidence.  (*See* TT at 423-24.)  Further, in response to
defense counsel's objection to the prosecutor's comments, the
judge stated to the jury, "there is no evidence before you that
the defendant tested positive for chlamydia."  (*Id.* at 402.)
The judge's instructions and curative measure "were sufficient
to cure any improper effects of the prosecutor's comments."
*King*, 2008 WL 4410109 at *36; (*see* TT at 22–23, 362, 413–15.)
This Court must presume the jury followed those instructions
absent any evidence to the contrary.  *See, e.g.*, *United States
v. Taveras*, 584 F. Supp. 2d 535, 541 (E.D.N.Y. 2008) ("[O]ur
criminal justice system relies upon the 'almost invariable

assumption of the law that jurors follow their instructions.'"
(quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987))).

Finally, as previously noted *supra*, any prosecutorial
misconduct was overcome by the overwhelming evidence presented
in the trial court of Petitioner's guilt, including the
testimony of both victims, Petitioner's written and oral
confession, and medical evidence of sexual abuse.  *See Dunn,* 561
F. Supp. 2d at 458 (S.D.N.Y. 2008) ("If there is clear evidence
of guilt, prosecutorial misconduct on summation is considered
harmless error." (citing *Garofolo v. Coomb*, 804 F.2d 201, 206
(2d Cir. 1986))).  Thus, even if the prosecutor's remarks were
improper, the trial court appropriately addressed the remarks
and provided curative instructions, and there was overwhelming
evidence of guilt.  Petitioner, therefore, could not prevail on
this claim if the Court were to reach the merits.

    **B.   Improper Summation Remarks**

Separate from Petitioner's claim regarding the prosecutor's
summation statement about chlamydia, Petitioner also asserts
that the prosecution's summation was improper because the
prosecutor vouched for the victims and "beseeched" the jury to
let them be heard.  (Pet. at 9.)  In his direct appeal,
Petitioner raised a similar claim that the prosecutor made
improper comments in her summation, and the Appellate Division
rejected it as "unpreserved for appellate review," citing New

York's contemporaneous objection rule. *See Green-Faulkner*, 136 N.Y.S.3d at 321 (citing N.Y. Crim. Proc. Law § 470.05(2)). Further, the Appellate Division stated "[n]onetheless, the errors in the prosecutor's summation were harmless, as there was overwhelming evidence of [Petitioner]'s guilt and no significant probability that any error in this regard might have contributed to the convictions." *Id.* As described below, this claim is unpreserved, procedurally barred and, in any event, fails on the merits.

### 1. Procedural Bar

According to New York's contemporaneous objection rule, "a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'" *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)). The objecting party must have "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'" *Downs v. Lape*, 657 F.3d 97, 102-03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

Here, Petitioner's counsel objected to some, but not all, of the prosecutor's allegedly improper remarks.  First, counsel objected on four occasions to the prosecutor's comments that the victims were telling the truth.  (TT at 383, 388.)  Out of these four objections, counsel once only stated, "objection," and three times specifically objected to "bolstering."  (*Id.*)  Second, when the prosecutor urged the jury to "let Victim 1 and Victim 2 know that they [are] being heard," counsel did not object.  (*Id.* at 378.)  Counsel's inconsistent, and sometimes general, objections "did not likely meet the specificity required to be preserved on appeal under New York's preservation rule."  *Adams v. Artus*, No. 09-CV-1941 (SLT) (VVP), 2012 WL 1077451, at *7 (E.D.N.Y. Feb. 24, 2012), *report and recommendation adopted,* 2012 WL 1078343 (E.D.N.Y. Mar. 30, 2012).  Following the summations by the parties, Petitioner's counsel made no further argument or objection regarding the prosecutor's comments about the victims telling the truth, and did not move for a mistrial or take any other action based on the prosecutor's specific comments.[10]  Thus, in the absence of any argument or evidence from Petitioner regarding cause for the default, prejudice, or actual innocence, the Court concludes

---

[10] Petitioner's counsel moved for a mistrial regarding the Prosecutor's statements about chlamydia, which the court denied, but did not move for a mistrial for the prosecutor's statements about the victims telling the truth. (*TT* at 406–15.)

that the Appellate Division was correct in finding the claim regarding the summation procedurally barred.  Even if the summation claim was not procedurally barred, it fails on the merits, as described below.

### 2. Merits

To support habeas relief for a claim of prosecutorial misconduct in summation, a prosecutor must have made improper comments that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A petitioner "must demonstrate that he suffered actual prejudice because [a] prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Rarely will "a prosecutor's summation [be] so prejudicial that a new trial is required." *United States v. Rodriguez,* 968 F.2d 130, 142 (2d Cir. 1992).  To determine whether a prosecutor's remarks in summation violated a petitioner's due process rights, courts consider three factors: "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) (quoting *United States v. Melendez,* 57 F.3d 238, 241 (2d Cir. 1995)).

36

It is well established that a prosecutor may not vouch for her witness' credibility because it "impl[ies] the existence of extraneous proof." *Perez*, 144 F.3d at 210 (quoting *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994)).  A prosecutor may, however, "'submit' credibility conclusions to the jury and ask the jury to consider whether the witnesses had a motive to lie." *Adams*, 2012 WL 1077451, at *8 (citing *Perez*, 144 F.3d at 210-11).  Here, some of the prosecutor's statements about the credibility of Victim 1 and Victim 2's testimony appear to be improper.  *See United States v. Newton*, 369 F.3d 659, 682 (2d Cir. 2004) (noting a "vouching concern" where a prosecutor stated that "these are credible witnesses" and "they came in here and told . . . the truth" in summation).  Specifically, the prosecutor stated "[y]ou can feel the truth of [the victims'] words, because it's too true"; "Victim 2's and Victim 1's testimony was credible"; and "the only conclusion is that both of their tesimon[ies] [were] credible."  (TT at 388.)

Nonetheless, "[p]rosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility," *Perez*, 144 F.3d at 210, as occurred here.  In his summation, defense counsel argued that the victims "got on the stand and they were afraid and it's very hard for children 12, 8, 9 years old to come and testify and especially testify about the subject matter, but this is

ultimately we are here in a criminal case and this is about people." (TT at 366.) This apparent attempt by defense counsel to undermine the credibility of the child victims warrants giving the prosecutor greater leeway to comment on their credibility. As mentioned above, however, the prosecutor's comments exceeded an appropriate response to statements by Petitioner's counsel.

Even assuming the prosecutor's comments in summation were improper, the comments did not so infect the trial as to deprive Petitioner of his constitutional right to a fair trial. The Second Circuit has stated "the severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding." *Adams*, 2012 WL 1077451, at *9 (quoting *United States v. Elias*, 285 F.3d 183, 191 (2d Cir. 2002)). Thus, "[a] trial containing only 'a few brief sentences' [of misconduct] during the prosecutor's summation did not deprive petitioner of a fair trial." *Id.* (citing *Donnelly*, 416 U.S. at 647). In contrast, "a prosecutor's use of information he knows to be false to describe evidence would be a violation of due process." *Id.* (citing *Miller v. Pate,* 386 U.S. 1, 7 (1967)). Here, the comments cited by Petitioner were brief, isolated events and do not "implicate an aggregate effect on the integrity of the trial." *Id.* at *10; *see also Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998) (noting that the severity of a

38

prosecutor's misconduct in summation "was mitigated by the brevity and fleeting nature of the improper comments").

Further, a court "cannot conclude that [] vouching substantially prejudiced [a petitioner] in light of the overwhelming evidence of [the petitioner's] guilt." *Pocesta v. Bradt*, No. 11-CV-916 (ARR), 2012 WL 4503432, at *10 (E.D.N.Y. Sept. 27, 2012); *see also McManus v. Vann*, No. CV-18-3800 (JFB), 2019 WL 3767538, at *13 (E.D.N.Y. Aug. 9, 2019) (declining habeas relief, even assuming arguendo that a prosecutor vouched for her witness, because a petitioner's overwhelming evidence of guilt prevented any actual prejudice).  Here, as discussed *supra* and stated by the Appellate Division, "there was overwhelming evidence of [Petitioner]'s guilt and no significant probability that any error [by the prosecutor] might have contributed to the convictions." *Green-Faulkner*, 136 N.Y.S.3d at 321.  Such evidence included Petitioner's signed confession, vivid and detailed testimony by Victim 1 and Victim 2, and evidence that Victim 2 tested positive for a sexually transmitted disease. (*See generally* TT.)

Finally, the trial court provided a proper curative instruction to the jury that summations are not evidence, (*see* TT at 424-25), and this Court must presume the jury followed that instruction absent any evidence to the contrary.  *See Taveras,* 584 F. Supp. 2d at 541.  Thus, even if it was not

39

procedurally barred, Petitioner's prosecutorial misconduct claim could not support habeas relief.

## III. Jury Instruction Regarding Voluntariness

Following summations by the parties and as part of the jury instructions, the trial court instructed the jury that a defendant's statement is involuntary if it is obtained "by the use or threatened use of physical force," but also if it is "obtained by means of any other improper conduct or undue pressure which impairs the defendant's physical or mental condition to the extent of undermining his ability to make a choice of whether or not to make a statement."  (TT at 432–33.) The court charged the jury with the "traditional" instruction for involuntariness, as provided in the New York Pattern Jury Instructions.  *See* New York Criminal Jury Instructions and Model Colloquies, General Applicability, Statements, Traditional Involuntariness.  New York's Pattern Jury Instructions also include an "expanded" charge which a trial court may utilize to supplement the traditional charge when appropriate.  *Id.,* Expanded Charge on Traditional Involuntariness.

Petitioner claims that the trial court denied him due process by not charging the jury with the expanded instruction on voluntariness of confessions.  (Pet. at 8.)  Specifically, Petitioner alleged that "police conduct during [his] prolonged detention and questioning was a factor the jury should have

40

considered in determining whether [his] statements were voluntary."[11]   (*Id.*) Petitioner requested the expanded involuntariness charge at trial and raised this claim in his appeal, and the Appellate Division rejected it on the merits. *See Green-Faulkner*, 136 N.Y.S.3d at 321.  The Appellate Division ruled that the "[court]'s charge to the jury concerning the voluntariness of the [Petitioner]'s statement to the police accurately stated the law, and the court did not improvidently exercise its discretion in declining to give the jury an expanded charge" on voluntariness.  *Id.*

When a petitioner alleges an error in a jury instruction, "the petitioner must go beyond demonstrating there was an error of state law and establish that the error violated a right guaranteed by federal constitutional law."  *Herron v. Fields,* No. 17-CV-07221 (VEC) (DF), 2021 WL 706334, at *17 (S.D.N.Y. Jan. 7, 2021), *report and recommendation adopted*, 2021 WL 695111 (S.D.N.Y. Feb. 19, 2021) (citing *Cupp v. Naughten,* 414 U.S. 141, 146 (1973)).  It is insufficient that a challenged instruction was "undesirable, erroneous, or even 'universally condemned.'"

---

[11] The expanded charge further instructs the jury to consider, among other things, "[t]he conduct of the police during their contact with the defendant, including, for example, the number of officers who questioned the defendant, the manner in which the defendant was questioned, what the police promised or said to the defendant, the defendant's treatment during the period of detention and questioning, and the length of time the defendant was questioned."  *See* New York Criminal Jury Instructions and Model Colloquies, General Applicability, Statements, Expanded Charge on Traditional Involuntariness.

*Cupp*, 414 U.S. at 146.  Instead, a petitioner must show "[an] ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process." *Id.* at 147. This burden is even higher where a petitioner challenges "[a]n omission, or an incomplete instruction, [which] is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Here, the trial court's jury instruction on voluntariness of confessions correctly stated New York law, following the traditional charge from the New York Pattern Jury Instructions, as stated previously.  *See* New York Criminal Jury Instructions and Model Colloquies, General Applicability, Statements, Traditional Involuntariness; *see also Kappen v. Bell*, No. 18-CV-05784 (CBA), 2022 WL 939847, at *13 (E.D.N.Y. Mar. 29, 2022), *appeal withdrawn*, 2022 WL 2965807 (2d Cir. June 27, 2022) (citation omitted) (finding the trial court correctly stated New York law where the charges "tracked the New York Pattern Jury Instructions").

New York courts are obliged to give an expanded instruction that goes beyond the model charge, however, when the evidence in a particular case would render the traditional charge insufficient.  *See People v. Lauderdale*, 746 N.Y.S.2d 163, 164–65 (2d Dep't 2002) (finding trial court erred in failing to give an expanded justification charge when the evidence showed the threat of deadly force came not from the victim or defendant,

42

but from a third person).  In his appellate brief, Petitioner
relied on *People v. Clinkscaleas*, 912 N.Y.S.2d 260 (2d Dep't
2010) in arguing the trial court erred in not giving an expanded
instruction regarding the voluntariness of his confession.  (ECF
No. 5-1, Def. Appellate Br., at 29-31.)  *Clinkscaleas* held that
a trial court should have given an expanded instruction on
voluntariness where the defendant was sixteen years old at the
time of confession and the defendant confessed after being "held
at the police station overnight while handcuffed to a chair and
subjected to repeated questioning."  912 N.Y.S.2d at 263.  The
Court does not find *Clinkscaleas* to be analogous to Petitioner's
case.

Here, in contrast, the evidence showed that Petitioner was
twenty-seven at the time of his confession, that he verbally
confessed two hours after entering the interview room, and that
he was not handcuffed nor subjected to repeated overnight
questioning.  (TT at 195-205, 217.)  Further, Petitioner
knowingly and voluntarily waived his *Miranda* rights before he
confessed, the interview room was unlocked and had a clear
window above the door, the two detectives in the interview room
were unarmed and dressed in plain clothes, and there was no
evidence that the detectives threatened or physically abused
Petitioner during his questioning.  (TT at 195-205.)
Approximately five hours after his oral statement, Petitioner

43

signed a written statement that summarized his earlier oral statement to the detective.  (*Id.* at 212–13.)  Before signing the written statement, Petitioner was offered food, something to drink, and use of the bathroom.  (*Id.* at 211.)

Given the above evidence, the trial court's instruction on voluntariness adequately conveyed the factors that the jury had to consider.  *See Lauderdale*, 746 N.Y.S.2d at 164 (noting that a "charge must instruct the jury on the relevant principles of law as they relate to the facts of the case").  The trial court's exercise of its discretion in declining petitioner's request for the expanded instruction outlining various other factors was proper given the evidence, and did not violate Petitioner's federal rights.  Thus, Petitioner's motion for habeas relief based on the court's voluntariness jury instruction is denied.

## IV.  Sentence

Petitioner's final claim is that the trial court imposed an excessive prison sentence.  (Pet. at 16.)  It is unclear whether Petitioner is challenging his sentence under state law or under the Eighth Amendment, but this Court liberally construes the Petition, because of Petitioner's *pro se* status, to allege that his sentence violates both state and federal law. *See Licausi*, 460 F. Supp. 3d at 260.  Nonetheless, the Court finds no grounds for habeas relief in connection with Petitioner's sentence under either theory.

### A.    State Law Excessive Sentence Claim

If Petitioner intends to renew his excessive sentence claim that he made to the Appellate Division, his claim is denied because it does not provide a federal basis for habeas relief. On direct appeal, Petitioner argued for the Appellate Division to "serve the interests of justice by substantially reducing [his] harsh sentence." (ECF No. 5-1, Def. Appellate Br., at 43.) The Appellate Division rejected this claim on the merits, stating only that "[t]he sentence imposed was not excessive." *See Green-Faulkner*, 136 N.Y.S.3d at 321 (citing *People v. Suitte*, 455 N.Y.S.2d 675 (2d Dep't 1982)).

New York law authorizes the Appellate Division to use its "discretion in the interest of justice" to reduce a defendant's sentence if, among other reasons, "[the] sentence, though legal, was unduly harsh or severe." *Santiago v. Shanley*, No. 20-CV-3530 (RPK), 2023 WL 3321665, at *3 (E.D.N.Y. May 8, 2023) (quoting N.Y. Crim. Proc. Law §§ 470.15(3)(c), (6)(b)). Numerous courts in this circuit, however, have found that a state law claim for a reduction in sentence, without more, does not raise a federal constitutional issue and is not cognizable for habeas review. *See Bonilla v. Lee*, 35 F. Supp. 3d 551, 572 (S.D.N.Y. 2014) (finding petitioner's excessive sentence claim under state law was not cognizable on habeas review); *see also Santiago*, 2023 WL 3321665, at *3 (same). Thus, to the extent

45

Petitioner seeks to renew his excessive sentence claim under state law, his claim is not cognizable on habeas review.

### B. Eighth Amendment Excessive Sentence Claim

To the extent Petitioner alleges that his sentence is unconstitutional, this claim is procedurally defaulted and does not support a claim for habeas relief because Petitioner failed to raise a constitutional claim in state court. Even if the Court were to reach the merits on this claim, however, it would fail.

### 1. Procedural Default

Petitioner's claim is procedurally defaulted because his direct appeal made no reference to the Eighth Amendment. A petitioner's exclusive "reliance on a state procedural law granting courts discretionary authority to reduce sentences d[oes] not fairly present his constitutional claim to the state court." *Santiago*, 2023 WL 3321665, at *3 (internal quotation marks omitted) (citing *King v. Cunningham*, 442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006) (collecting cases)). Where a petitioner "failed to exhaust the remedies available in state court," the court "need not consider the claim." *Id.* (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Thus, this claim was not properly exhausted and cannot be considered by this Court.

To overcome a procedural default, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Here, Petitioner has not provided any explanation for his failure to properly exhaust his constitutional claim in state court or offered proof of actual innocence. Thus, he may not overcome the procedural default for any constitutional claim regarding the excessiveness of his sentence.

### 2. Merits

Even if the Court could consider Petitioner's claim, it is without merit. The Eighth Amendment prohibits "cruel and unusual" punishments in federal prosecutions. *See* U.S. Const. amend. VIII. This an essential component of due process that applies in state prosecutions through the Fourteenth Amendment's Due Process Clause. *See* U.S. Const. amend. XIV, § 1; *Robinson v. California*, 370 U.S. 660, 667 (1962). The Supreme Court has held that a prison sentence can be cruel and unusual if it is "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 30-31 (2003) (plurality opinion).

A state court's prison sentence that falls within the statutory range set by state law is generally not grossly disproportionate or subject to habeas relief. *See White*, 969

47

F.2d at 1383 ("No federal constitutional issue is presented
where . . . the sentence is within the range prescribed by state
law."); *Constant v. Martuscello*, 119 F. Supp. 3d 87, 139
(E.D.N.Y. 2015) (collecting cases), *aff'd*, 677 F. App'x 727 (2d
Cir. 2017).  Here, Petitioner's convictions included two counts
of Course of Sexual Conduct Against a Child in the First Degree.
(*See* Pet. at 1; State Opp'n at 2-3.)  At the time of
Petitioner's sentencing, New York state law deemed this offense
a class B felony.  *See* N.Y. Penal Law §§ 70.02(1)(a),
70.80(1)(a)-(b).  The statutorily authorized maximum for a class
B felony was twenty-five years on each count.  *See id.* §§
70.02(3)(a), 70.80(6).  Petitioner's thirty-six-year sentence
was well below the total statutory maximum of fifty years for
the two counts of conviction, accordingly.  Petitioner was
convicted of serious offenses—personally sexually abusing two
young children on numerous occasions—and, in light of that
conduct, his sentence does not "shock the conscience."
*Constant*, 119 F. Supp. 3d at 139.  Therefore, Petitioner's
thirty-six-year aggregate prison sentence cannot support federal
habeas relief.

## CONCLUSION

For the foregoing reasons, Petitioner's Section 2254
petition is respectfully **denied** and **dismissed** in its entirety.
Because Petitioner has not made a substantial showing of the

48

denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); Rules Governing § 2254 and § 2255 Cases in the United States District Courts, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully requested to amend the caption to reflect that Ernest Lowerre (the Superintendent of Five Points Correctional Facility) is the Respondent, enter judgment in favor of Lowerre, and close this case. In accordance with 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies *in forma pauperis* status for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is requested to serve a copy of this Memorandum and Order and the Judgment on Petitioner and note such service on the docket by April 26, 2024.

**SO ORDERED**

Dated:     April 24, 2024
           Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

49